# A F F I D A V I T

**STATE OF WEST VIRGINIA**

**COUNTY OF KANAWHA, to-wit:**

I, Aaron M. Lee, being first duly sworn, do hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant to search a semi-truck, VIN:1FUJGLDR29LAH1262, with a white trailer bearing Idaho registration TF8128 (hereafter referred to as "SUBJECT VEHICLE"), which is used by ALEX Last Name Unknown (LNU), also known as "ROOSTER" (hereafter referred to as "ROOSTER") and Idilberto GONZALEZ (hereinafter "GONZALEZ"), for the purpose of storing, transporting, and distributing controlled substances. As set forth herein, probable cause exists that ROOSTER and GONZALEZ have committed and will continue to commit violations of the following offenses enumerated in Title 18, United States Code, Section 2516(1): (i) the distribution and possession with intent to distribute controlled substances in violation of Title 21, United States Code, Section 841(a)(1); (ii) conspiracy to commit and attempts to commit these offenses, in violation of Title 21, United States Code, Section 846; and (iii) use of a communications facility in facilitating the commission of the foregoing offenses, in violation of Title 21, United States Code, Section 843(b) ("TARGET OFFENSES"). Further, probable cause exists that evidence, proceeds, and fruits and instrumentalities of those

offenses are currently located at the SUBJECT VEHICLE more particularly described in ATTACHMENT A.

2. I am a Special Agent employed by the United States Department of Justice in the Federal Bureau of Investigation (hereinafter "FBI"), and as such I am a "federal law enforcement officer" within the meaning of Fed. R. Crim. P. 41(a)(2)(C) and am authorized to apply for federal search warrants. I have been employed as a Special Agent of the FBI since January of 2019. I am currently assigned to the FBI Charleston Resident Agency, Charleston, West Virginia. I have received specialized training while attending the FBI Training Academy in Quantico, Virginia, concerning violations of the Controlled Substances Act within Title 21 of the United States Code. During my employment with FBI, I have been working as a Special Agent and have been involved in several investigations which include matters of national security, drugs, and complex financial crime. As part of my duties with the FBI, I investigate violations of federal law, including drug trafficking offenses enumerated in Title 21 U.S.C. §§ 841, 843, and 846, and I have been the affiant on search warrants, and personally participated in arrests and search warrants. Prior to working for the FBI, I was employed as a Correctional Officer in the West Virginia State prison system and the Federal Bureau of Prisons for more than 3 years. During my time as a Correctional Officer, I have conducted searches for contraband to include drugs

and the investigation of violent crimes occurring within West Virginia prison facilities.

3. During my tenure with the FBI, I have participated in numerous drug investigations during the course of which I have (a) conducted physical surveillance; (b) executed search warrants at locations where drugs, drug proceeds, and records of drugs have been found; (c) reviewed and analyzed numerous taped conversations of drug traffickers; (d) debriefed cooperating drug traffickers; (e) monitored wiretapped conversations of drug traffickers; and (f) conducted surveillance of individuals engaged in drug trafficking. Through my training, experience, and conversations with other experienced agents and officers, I have become familiar with (a) the manner and methods by which illegal drugs are imported and distributed; (b) the method of payment for such drugs; and (c) the efforts of persons involved in such activity to avoid detection by law enforcement.

4. I am an investigative or law enforcement officer within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in 18 U.S.C. § 2516. Among other duties, I am participating in an investigation relating to the distribution of controlled substances by ROOSTER, GONZALEZ, and others as yet unknown ("SUBJECTS" or "SUBJECT INDIVIDUALS"), in violation of 21 U.S.C. §§ 841(a)(1), 843(b), and 846, that is,

distribution of controlled substances; use of a communication facility to facilitate drug trafficking; and conspiracy to distribute controlled substances.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement officers, and witnesses. Summaries of recorded conversations are based on draft transcripts of those conversations. This affidavit is intended to show that there is probable cause for the requested warrant and does not set forth all my knowledge about this investigation.

## Probable Cause

6. Based upon the facts of this investigation and the information contained within this affidavit, probable cause exists that ROOSTER and GONZALEZ currently store evidence more fully described in ATTACHMENT B within the SUBJECT VEHICLE.

7. In February 2023, the FBI developed a confidential informant (hereinafter "CI"). The CI has proven to be credible and reliable based on corroborating information gathered during this investigation, including recorded calls between CI and ROOSTER. The CI is cooperating with law enforcement in hopes of receiving leniency in future federal charges. The CI has a known conviction for Possession with Intent Sale/Delivery of a Controlled Substance.

4

8. The CI advised agents that his/her drug supplier is ROOSTER. ROOSTER resides in California. The CI speaks to ROOSTER over the phone but has met ROOSTER in person. Over the last year, ROOSTER has used 18-wheeler trucks to transport controlled substances from California to the CI in Bluefield, West Virginia and to other customers in locations throughout the United States. CI advised agents that a truck arrives to resupply the CI with controlled substances approximately once a month. CI advised that the first and second time the truck came to resupply the CI, the CI obtained approximately five kilograms of cocaine and a kilogram of fentanyl each time. After the first two months, the CI advised that s/he began getting 50 pounds of methamphetamine per trip which later grew to 100 pounds and then 200 pounds per trip. The last two times the CI was resupplied, the CI obtained 200 pounds of methamphetamine from the truck. ROOSTER communicates with the CI by phone and tells the CI where and when to meet the truck to obtain his/her resupply.

9. On March 1, 2023, the CI recorded his/her phone calls with ROOSTER while the CI was in the Southern District of West Virginia. The following is a portion of one of the calls between the CI and ROOSTER.

ROOSTER: I was going to tell you um. How many girls do you want to prepare for you?

CI: Shit bro. Like we usually do. What you usually

|          |                                                                                                     |
|----------|-----------------------------------------------------------------------------------------------------|
|          | do? I mean it shouldn't, I mean.                                                                    |
| ROOSTER: | Two hands?                                                                                          |
| CI:      | Yeah, that's cool.                                                                                  |
| ROOSTER: | Okay.                                                                                               |
| CI:      | Yeah, that's cool. That's cool.                                                                     |
| ROOSTER: | Get on that ball. These guys told be they will be there around 10:30-11:00 okay, just so you know so you are ready. |
| CI:      | I gotch you, yeah I got to, I gotch you, I gotch you, I gotch you. I just got to go move around and get it and then um get it together for you like you want it. You feel what I'm saying. Back whatever, you know what I mean. I aint goin to do it like I did last time, it was rushed. |
| ROOSTER: | Right.                                                                                              |
| CI:      | And I know, you don't like that shit man.                                                           |
| ROOSTER: | [UI] box nice and all or something good. Or put in a bag with a lock or something. You know what I mean? |
| CI:      | [Laugh] Yeah, I feel you, I feel you. I don't got no bags with locks though bro.                    |
| ROOSTER: | That's fine just vacuum seal that mother fucker.                                                    |
| CI:      | I gotch you, I gotch you.                                                                           |
| ROOSTER: | Rubber bands.                                                                                       |

CI:         I know, man you I know, I gotch you, I gotch you.

ROOSTER:    Bro.

CI:         What's good buddy?

ROOSTER:    You sure um, you got extra bread on you or when I come back? For the girl, you want to put that in there now?

CI:         You want some extra bread?

ROOSTER:    Yeah, so I can get you those two hands. You know I'm going to leave you the sandwiches.

CI:         Yeah, I know but damn bro. Um. You got to leave me with something. You know, you know I gotch you bro.

ROOSTER:    Yeah, but I'm [UI] the girls, we always, you know always with girls, you always give me that half but I'm saying.

CI:         Yeah, like half.

ROOSTER:    [UI] come back just when I come back you just going to have to hand that to me.

CI:         I know, I know, I know.

ROOSTER:    I just want to clear up what's, the old [UI] you know.

CI:         I know, I know, I know. Um, you don't think you will be able to give me like, once it comes back, like a couple of day or something.

7

ROOSTER: [UI] have it [UI] unless.

CI: Bro, you know, you know what I be. I gotch you, I gotch you. I just got to go get the bunny and whatever.

ROOSTER: Can you send me for that two hands or do you want to wait till I get back? How do you want to do it?

CI: Can you wait to you get back?

ROOSTER: You just want to take care of the old tab?

CI: Yeah, let's just take care of this one, this tab and then the next one. You hear what I'm saying?

ROOSTER: Okay. Well, make sure everything is in there please.

CI: Bro, I gotch you. I gotch you. Huh?

ROOSTER: Don't be late. I gotch you um, next week, I gotch you bro. I'm going fuckin hell Mary.

CI: Man it aint. It's going to be two man. You always say that. I know. I feel you.

ROOSTER: Yeah, you already know.

CI: Yeah, I know, I know. Yeah, I know.

10. Based on my training, experience, and the investigation thus far, I believe ROOSTER asked the CI how much cocaine he wanted ("How many girls do you want to prepare for you?"). The CI stated the same amount as usual ("Shit bro. Like we usually do.").

8

ROOSTER asked if he wanted 10 kilograms of cocaine ("Two hands?") and the CI advised yes ("Yeah, that's cool."). ROOSTER told the CI to have the money owed to ROOSTER ready when the drivers of the truck arrive in Bluefield, West Virginia between 10:30 and 11:00 PM ("Get on that ball. These guys told be they will be there around 10:30-11:00 okay, just so you know so you are ready."). ROOSTER and the CI continue to discuss the money the CI will provide to the drivers of the truck. ROOSTER asked if the CI just wanted to pay for the past drugs the CI received ("You just want to take care of the old tab?") and the CI confirmed that he just wanted to pay the money s/he owed and s/he will pay for the cocaine when s/he receives it ("Yeah, let's just take care of this one, this tab and then the next one.")

11. On March 17, 2023 and March 18, 2023, the CI had several recorded calls and a text message with ROOSTER. ROOSTER advised the CI during these calls and the text message that the tractor trailer would be meeting the CI near Green Valley Bowling Alley on Airport Road in Bluefield, West Virginia on March 18, 2023 at approximately 9:00 P.M. As the evening of March 18, 2023 progressed, the meeting time got pushed back several times by subsequent phone calls from ROOSTER to the CI.

12. On March 18, 2023, the CI met with law enforcement to conduct a controlled transaction with ROOSTER's driver, later identified to be GONZALEZ. The CI and his/her vehicle were

9

searched by officers and no money or contraband was found. The CI was provided audio and video recording equipment along with a cardboard box that was made to look and weigh as if it contained over $250,000 in United States currency. Surveillance officers observed the CI arrive at the meeting location given to the CI by ROOSTER to conduct the exchange. The CI assisted GONZALEZ in loading boxes as well as one bag from the SUBJECT VEHICLE into the CI's vehicle. The CI departed and traveled directly back to meet law enforcement with no stops along the way. The boxes were opened by law enforcement and appeared to contain several pounds of suspected methamphetamine. The bag was opened and appeared to contain several kilograms of cocaine. The CI and the CI's vehicle were searched again by officers and no money or additional contraband were located.

13. Following the controlled transaction with the CI, law enforcement conducted surveillance on the SUBJECT VEHICLE and a traffic stop of the SUBJECT VEHICLE was conducted in Bluefield, West Virginia. Detective E.S. Johnson deployed a certified narcotics canine, "Rex", to perform an exterior sniff of the SUBJECT VEHICLE. "Rex" gave a positive indication to the odor of a controlled substance on the SUBJECT VEHICLE. "Rex" is certified in narcotic detection annually and performs monthly and periodic training in narcotics detection with Detective E.S. Johnson of the Metropolitan Drug Enforcement Network Team. "Rex" was last

certified in April 2022. Law enforcement began transporting the SUBJECT VEHICLE to a secure location within the Southern District of West Virginia in anticipation of a search warrant.

### BACKGROUND: ITEMS TO BE SEIZED

14. Based upon my experience and training, consultation with other law enforcement officers experienced in drug and financial investigations, and all facts and opinions set forth in this affidavit, I know that:

   a. Individuals involved in narcotics trafficking often maintain the following items: controlled substances and paraphernalia for packaging, weighing, cutting, testing, distributing and manufacturing controlled substances.

   b. Individuals involved in narcotics trafficking often maintain records of their narcotics transactions and other records of evidentiary value for months or years at a time. It is common, for example, for narcotics traffickers to keep pay/owe sheets or other papers of narcotics sold and monies owed. Such pay/owe sheets or papers are used as a basis for accounting and for settling existing debts. Such records are often maintained for a substantial period of time even after the debts are collected. I have found in my training and experience that such records are invaluable to narcotics traffickers and that such records are rarely discarded. Finally, it has also been my experience that such records and pay/owe sheets also frequently include the names,

11

identities and telephone numbers of suppliers, customers and co-conspirators.

    c.    Individuals involved in narcotics trafficking must often rely on others to obtain their drugs and to help them market the narcotics. Frequently, traffickers maintain evidence of the identities of these co-conspirators.

    d.    Individuals involved in narcotics trafficking often keep and maintain large amounts of United States currency. Such funds are often used for everyday expenditures and to maintain and finance their ongoing narcotics business.

    e.    Individuals involved in narcotics trafficking often maintain weapons, firearms and ammunition on their person or in their residence and/or vehicles. Such weapons and firearms are used, and can be used, as an instrumentality of the crime of possession and distribution of drugs and firearms. Furthermore, I am aware of instances in which traffickers have maintained such items in their residences and vehicles in order to protect themselves and guard their drugs, firearms and profits, as well as for enforcement purposes during their narcotics and firearms dealings.

    f.    Vehicles used by individuals involved in narcotics trafficking usually contain articles of personal property evidencing the identity of person(s) occupying, possessing, owning, frequenting or controlling the vehicle.

g. Individuals involved in narcotics trafficking frequently communicate with co-conspirators by means of cellular telephones and electronic paging devices and usually maintain these items on their person and/or in their residences and vehicles. This warrant seeks permission to seize such devices and to search or analyze the same off-site, if necessary.

h. Individuals involved in narcotics trafficking often utilize radio scanners, police radios and other electronic equipment in order to conduct counter-surveillance upon law enforcement authorities, and usually maintain these items on their person and/or in their residences and vehicles.

## CONCLUSION

Based on the information contained in this affidavit, probable cause exists to search the SUBJECT VEHICLE for evidence of the TARGET OFFENSES. The undersigned respectfully requests that a search warrant be issued authorizing a search of the SUBJECT VEHICLE, described in more detail in Attachment A, for the evidence

13

listed in Attachment B. Since the SUBJECT VEHICLE is currently in law enforcement possession, the undersigned respectfully requests that authorization be given to search the SUBJECT VEHICLE at any time of the day or night in order to allow the search to be completed in an expeditious manner.

    Further your Affiant sayeth naught.

Respectfully submitted,

_____
Aaron M. Lee, Special Agent
Federal Bureau of Investigation


Sworn to me by telephone or other reliable or other reliable electronic means on March 19, 2023.

_____
OMAR J. ABOULHOSN
United States Magistrate Judge